**Jose B. MARTINEZ,**
**Petitioner-Appellant,**

v.

**David R. HARRIS, Superintendent, Green Haven Correctional Facility, and Robert Abrams, Respondents-Appellees.**

**No. 768, Docket 81–2307.**

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1982.

Decided April 1, 1982.

Appellant challenges his detention on the ground that his jury trial in New York Supreme Court deprived him of certain constitutional rights, more fully described below. In November 1977, Martinez was convicted of second degree manslaughter, first degree assault and second degree criminal possession of a weapon and sentenced to concurrent terms of five to 15 years in prison on each count. His conviction was affirmed without opinion by the Appellate Division, 74 A.D.2d 740, 424 N.Y.S.2d 806 (1st Dep't 1980), and the New York Court of Appeals denied leave to appeal, 49 N.Y.2d 1005, 429 N.Y.S.2d 1034, 406 N.E.2d 1088 (1980). Appellant filed two prior petitions for writs of habeas corpus in federal court, but these were denied for failure to exhaust state remedies. Subsequently, Martinez applied for habeas relief from the New York Supreme Court, and that petition was also denied.

Donald J. Siewert, Asst. Dist. Atty., New York County, New York City (Robert M. Morgenthau, Dist. Atty., New York County, Vivian Berger, Asst. Dist. Atty., New York City, of counsel), for respondents-appellees.

Larry J. Ritchie, Washington, D.C. (Geltner & Ritchie, Michael E. Geltner, Washington, D.C., of counsel), for petitioner-appellant.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND and MESKILL, Circuit Judges.

FEINBERG, Chief Judge:

Jose B. Martinez appeals from a judgment of the United States District Court for the Southern District of New York, Gerard L. Goettel, J., denying appellant's petition for a writ of habeas corpus under 28 U.S.C. § 2254. The judgment was based on the district judge's memorandum decision dated July 21, 1981, which adopted the recommendations of Magistrate Naomi Reice Buchwald's report of June 3, 1981.

## I.

The crimes for which appellant is now incarcerated took place in May 1976, when appellant was in a bar in Manhattan drinking with some friends. In the course of the incident, a revolver was produced and appellant's companions, Tony Puentes, Millie Jiminez and Orlando Fernandez, were shot. Puentes died as a result of his wounds. Appellant fled from the scene with a gunshot wound of his own and was apprehended the next day. He was indicted two weeks later on one count of intentional murder in the second degree for the killing of Tony Puentes, two counts of first degree assault (intentional and reckless) upon Orlando Fernandez, one count of second degree assault (intentional) upon Millie Jiminez and one count of criminal possession of a weapon in the second degree.

There were two trials in the state courts for the crimes included in this indictment. At the first trial, which began in April 1977, all but one of the charges in the indictment, as well as the lesser-included offenses of first and second degree manslaughter, were

submitted to the jury.[1] That trial ended with a partial verdict acquitting appellant of second degree murder and first degree manslaughter. The jury deadlocked on the other charges, after deliberating for two days. During that time, the jury sent several notes to the judge requesting that portions of the transcript be read and questioning the effect of a partial verdict,[2] and the defense moved unsuccessfully for a mistrial. Neither party objected when the jury was discharged.

In September 1977, a retrial began on the counts of second degree manslaughter, first degree assault and second degree possession of a weapon.[3] This time the jury deliberated for only three hours. During that time, it asked the judge several questions, and at one point, asked if a juror who had made up his mind could be excused. As part of its response, the court stated the following:

> Now, I don't care how you decide, but you must follow the law and the instructions of the Court. There is no way you can do otherwise. That is a must. You must follow the instructions of the Court, and no juror can be excused once he has been impaneled.
>
> . . . .
>
> I said that I would give you any assistance that you needed by having the testimony read, re-read, and all the exhibits; and when a juror says he refuses to follow the instructions of the Court, you know, that is almost synonymous with being criminal in that he has violated his oath that he took.
>
> . . . .
>
> Now I am not trying to coerce anybody into changing his or her mind, but I am certain that if that last statement was true—said he refused to follow the instructions of the Court, the juror is get-

ting him or herself in serious difficulty. . . .

> All right. We are not playing games here. You can't walk in and out when you get ready. It just doesn't happen that way. Once you are sworn, you must perform your duty.

The defense did not object to this charge. The jury deliberated for an hour after this instruction was given, and found appellant guilty of second degree manslaughter, one count of first degree assault and criminal possession of a weapon.

## II.

Martinez first claims that his constitutional rights under the double jeopardy clause of the fifth amendment were violated because at the second trial, he was tried on charges on which he had been once before placed in jeopardy. Magistrate Buchwald carefully considered all aspects of this claim, and we affirm the judgment of the district court rejecting the claim for the reasons set forth in her thorough report.

Appellant also claims that his due process rights under the fourteenth amendment were violated by the supplemental charge cited above. While it is true that some aspects of that instruction raise a problem, arguably of constitutional dimension, appellees claim that the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–2508, 53 L.Ed.2d 594 (1977), bars us from considering it. In that case, the Court held that a claimant's failure to comply with a state's procedural rule for raising a federal constitutional claim was an independent and adequate state ground of decision, sufficient to bar federal court review of the claim unless the aggrieved party could show cause for his procedural default and prejudice resulting from the alleged violation.

---

1. The one charge not submitted to the jury was the count of assault in the second degree on Jiminez, which was dismissed for lack of evidence.

2. The trial judge's initial response to this question was incorrect in that he failed to explain that if the jury acquitted appellant on a lesser homicide charge he could not be retried on a greater one. The defense made an immediate

motion for a mistrial, based, inter alia, on this error. This motion was denied, but the judge did call the jury back in to clarify his charge.

3. Appellant was also tried again on the count for second degree assault upon Millie Jiminez in violation of his double jeopardy rights. Since he was acquitted on this count, there are no ramifications from this error.

Appellees argue that since N.Y.C.P.L. § 470.05(2) requires a contemporaneous objection to a jury charge, which was not made, this case is governed by *Sykes*. Appellant claims that *Sykes* is no bar because the Appellate Division decided the constitutional issue on the merits. Appellant argues that he raised the constitutional challenge in the Appellate Division, and that the prosecutor joined issue on the merits.[4] However, the Appellate Division affirmed without opinion. This poses the question of how to interpret the silence of that court on the issue.

We have been faced several times in the last few years with the problem of identifying the ground for New York State appellate court rejection of a federal constitutional claim, see, e.g., *Taylor v. Harris*, 640 F.2d 1 (2d Cir.), cert. denied, 101 S.Ct. 3089 (1981); *Washington v. Harris*, 650 F.2d 447, 451–52 (2d Cir. 1981); *Gruttola v. Hammock*, 639 F.2d 922, 928–30 (2d Cir. 1981), and we think it will be helpful to state the law on the issue, as we understand it, as it has developed in this circuit. There are three ways for a state prosecutor to handle federal constitutional claims that a defendant does not make at trial but raises in the Appellate Division. The prosecutor can seek affirmance solely on procedural grounds, which would involve a considerable risk since the Appellate Division might find that the interests of justice would be served by considering the claim on the merits in its discretionary jurisdiction under N.Y.C.P.L. § 470.15(6)(a); the prosecutor can address his arguments entirely to the merits of the claim; or he can argue both points in the alternative.

If the only argument asserted by the state prosecutor is the procedural default, then it is logical for us to conclude that when the Appellate Division affirmed the judgment of conviction, it did so on procedural grounds. Under *Sykes*, this adequate and independent state ground ordinarily precludes our review of the federal claim. See *Sykes*, 433 U.S. at 86–87, 97 S.Ct. at 2506. See also Hill, The Forfeiture of Constitutional Rights in Criminal Cases, 78 Colum.L.Rev. 1050, 1082–83 (1978). Conversely, if only the merits are addressed by the briefs and arguments in the Appellate Division, then usually there is no adequate and independent state ground upon which the state judgment rests. The case is then controlled by *Washington*, supra, where we stated that we could find "no warrant ... for guarding state procedural rules more vigilantly than the State itself does." 650 F.2d at 452. In other words, if the prosecutor does not raise the procedural point, and if the court gives no indication that it is relying on it, then the federal claim is open for our consideration.

Arguments in the Appellate Division cast in the alternative, however, cannot be governed by *Washington*. Arguing in the alternative is a well-accepted practice. For instance, it has been explicitly approved in the rules governing federal trials, Fed.R. Civ.P. 8(e)(2). It therefore makes no sense for us to hold that when a state prosecutor acts as a prudent advocate, he waives any of the alternative arguments that he asserts. Furthermore, we do not believe that the Appellate Division's silence evinces an intent to overlook the procedural error. The interest-of-justice jurisdiction under § 470.15 is not invoked routinely, see, e.g., *People v. Robinson*, 36 N.Y.2d 224, 228–29, 367 N.Y.S.2d 208, 326 N.E.2d 784 (1975). Therefore, we feel justified in assuming that the Appellate Division does not exercise its discretion under that section and decide a case solely on the merits of a claim, unless it says so.[5]

---

4. The State has argued, both on appeal and in the court below, that appellant did not ground his state-court challenge to the jury instruction on the federal constitution, and thus did not exhaust state remedies on this issue, see *Daye v. Attorney General*, 663 F.2d 1155 (2d Cir. 1981), reh'g in banc granted, Jan. 13, 1982. The magistrate and the district judge found,

however, that this claim was properly presented to the state court. For reasons given in the text, we need not reach the exhaustion issue.

5. This discussion is limited to the issue of how we construe silence on the part of the Appellate Division, when there is an adequate state procedural ground for sustaining the conviction, as in *Sykes*. See also *Hankerson v. North*

In this case, the State argued in the alternative in the Appellate Division,[6] and as already indicated, that court affirmed without opinion. Consequently, we find that Martinez's conviction rests on an adequate and independent state ground that precludes our review. Furthermore, since appellant on this record has failed to show sufficient cause for not objecting contemporaneously, we do not reach his constitutional claim under the limited exception provided by *Sykes,* 433 U.S. at 90–91, 97 S.Ct. at 2508.[7]

The judgment of the district court is affirmed for the reasons set out above.

---

*Carolina,* 432 U.S. 233, 244 n.8 (1977); cf. Hill, 78 Colum.L.Rev. at 1082–88 and 1083 n.182.

**6.** We recognize that a typographical error in the prosecutor's brief in the Appellate Division conceivably could have misled that court into believing that defense counsel had objected to the charge. The prosecutor's entire discussion in the brief, however, focused on the Appellate Division's interest-of-justice jurisdiction, a discussion that would have been inapposite if there had been a contemporaneous objection below. We therefore believe that the prosecutor adequately called the state court's attention to defense counsel's procedural default.

**7.** We are aware that in his reply brief, appellant argues that ineffective assistance of counsel "may have been 'cause' for not objecting."

This point should have been raised before Magistrate Buchwald, in response to the State's initial objections to his due process claim.

We are also aware that appellant has challenged his detention on the ground that he was deprived of effective representation. He first made that claim in habeas petitions entertained by Judge Gagliardi. These petitions were dismissed for failure to exhaust state remedies. He also presented the claim to Judge Goettel, who refused to consider it on the ground that it was untimely made. This claim has therefore never been adjudicated, and our decision here is without prejudice to appellant's pressing his claim in the appropriate forum.